**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

GARY PHILLIPS,

          Plaintiff,                              Case No. 1:11-cv-00087

      vs.                                    Weber, J.
                                               Bowman, M.J.

TIMOTHY HUBBARD,

          Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Phillips brings this action under Title 42 U.S.C. § 1983 alleging that Defendant Hubbard, acting under color of state law, deprived Philips of federal constitutional rights protected by the Fourth Amendment. This matter is now before the court on Defendant's motion for summary judgment (Doc. 45); Plaintiff's motion for partial summary judgment (Doc. 46) and the parties' responsive memoranda. (Docs. 44, 47, 52, 56 ). The Court held oral argument on the parties' pending motions on July 20, 2012.

## I. FACTS AND PROCEDURAL BACKGROUND

In 2004, Phillips purchased a home and property located at 1902 Shinkle Ridge Road, Georgetown, OH 45121. (Doc. 42, Phillips dep. at 13). Phillips knew at the time of purchase that the property was subject to an eight-foot easement in favor of a third party. *Id.* at 53. Notably, in 1982, Charles Utter, has rented farmland surrounding 1902 Shinkle Ridge Road from Mr. and Mrs. Greg Glos. (Doc. 45, Ex. I, Utter Aff; Doc.43, Hubbard dep. 36). The Glos's have a recorded, express easement for ingress and egress across an eight-foot lane over Phillips' property at 1902 Shinkle Ridge Road

(Doc. 45, Ex. I, Utter Aff.). Utter has express permission from the Glos's to use the easement. Phillips acknowledges that Utter has permission to use the easement and that it is intended for "agricultural egress." (Doc. 42, Phillips dep. 63).

In May of 2009, without informing Utter, Phillips began making repairs to the easement. (Doc. 42, Phillips dep. at 44, 62). Some time before May 22, 2009, during the course of construction, Hubbard or an agent thereof, left pieces of cement upon the easement. (Doc. 42, Phillips dep. 48 ). On May 22, 2009, between 7:30 a.m. and 8:30 a.m., Utter approached Phillips to inform him that the cement pieces, along with several of Phillips' vehicles, were obstructing the easement in such a way that Utter could not move his farm equipment through the designated lane. (Phillips dep. 66). Phillips moved the cars that day and Utter agreed to use an alternative route to access his fields until Phillips could remove the concrete pieces from the easement and complete his repair project. (Phillips dep. 68-69, 73).

On July 23, 2009, approximately two months after the conversation between Phillips and Utter regarding the alleged obstruction, Utter drove to the Brown County Sheriff's office and lodged a complaint with Chief Deputy Jon Schadle. (Doc. 45, Ex. I). According to Hubbard, Schadle asked him to "do a report for Mr. Utter and to check out the violations." (Doc. 43, Hubbard dep. 51). Utter then informed Hubbard about the dispute regarding the easement and says he showed Hubbard a copy the deed granting the easement, and several pictures Utter had taken of the alleged obstruction. (Doc. 45, Ex. I).

After meeting with Utter, Hubbard went to Phillips' property at 1902 Shinkle Ridge Road to conduct an investigation. (Doc. 43, Hubbard Dep. 56). Utter

accompanied Hubbard to the site. At this time, Hubbard did not have a warrant awhen he arrived the properties at 1902 Shinkle Ridge Road to investigate Utter's complaint. (Hubbard Dep. 60:5-16). Once on site, Hubbard knocked on the door of the home located at 1902 Shinkle Ridge Road and received no response. (Hubbard Dep. 56:24-25). From the driveway, he could see "jagged rocks" and vehicles overhanging into what he believed was the easement at issue. (Hubbard Dep. 56, 57). After taking photographs from the driveway, Hubbard "left [Phillips'] property, went to the field driveway, and went "around the back" to photograph "other potential issues with the farm equipment." (Hubbard Dep. 57:1-8). Thereafter, Hubbard looked around the back of the property to take pictures of "other potential issues," because he "could not see everything in the driveway," and to see if there were alternative means of ingress and egress for Utter to use. (Hubbard Dep. 57, 59).

After conducting his investigation and taking several photographs, Hubbard visited the Brown County Prosecutor's office, where he met with Prosecutor Jessica Andrea Little. (Hubbard Dep. 65). According to Hubbard, he sought Little's counsel because he was unsure if Phillips had violated any laws. (Hubbard Dep. 66). Little advised that filing charges of criminal mischief against Phillips was an appropriate course of action. (Little Dep. 42:5-9). That day, Hubbard completed the paper work to file a complaint against Phillips and to have a warrant issued for his arrest. (Hubbard Dep. 69). Approximately one week later, Chief Deputy Schadle received a complaint that the condition of the easement remained unchanged. (Hubbard Dep. 96). According to Hubbard, at Schadle's direction, he returned to 1902 Shinkle Ridge Road and conducted another investigation. (Hubbard Dep. 95:17-23). After noting that the

condition of the easement remained essentially unchanged, Hubbard once again contacted Prosecutor Little, and she authorized a second set of Criminal Mischief charges against Phillips. (Hubbard dep. 96). Hubbard then completed the paperwork necessary to file a second criminal complaint against Phillips and to have a second warrant issued for his arrest. (Hubbard dep. 98). On August 15, 2009, shortly after Hubbard filed the second set of charges, at approximately 7:00 am, Phillips was arrested and brought to Brown County Jail by a Deputy Gould. (Hubbard Dep. 116); (Phillips Dep. 91). Once released, Phillips returned home, and removed the alleged obstructions from the easement – a process which took approximately one and one half hours. (Phillips Dep. 93, 94). Phillips retained counsel and attended one of two pretrial hearings regarding these charges. (Phillips Dep. 103) All charges against Phillips were ultimately dropped by the prosecuting attorney.

Thereafter, Phillips brought this action against Hubbard pursuant to 42. U.S.C. § 1983, claiming that, by searching Phillips' private property without a warrant and causing Phillips to be arrested and prosecuted without probable cause, Hubbard deprived him of constitutional rights provided by the Fourth Amendment. (Doc. 36 4:1-6:29). Phillips denies that the easement was ever so obstructed as to prevent Utter from accessing his fields with his equipment. This matter is now before the Court on the parties' cross-motions for summary judgment.

## II. ANALYSIS

### A. Summary Judgment Standard of Review

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the

nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the non-movant, however, does not mean that the court must find a factual dispute where record evidence contradicts the non-movant's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 567 (citation omitted). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial. *Id.* at 587. It is the non-moving party's burden to point out record evidence to support her claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a [party's] claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

## B. **The Parties' Pending Motions**

Defendant's motion for summary judgment asserts that he is entitled to qualified immunity on Plaintiff's claims because his actions in this matter were reasonable, as a reasonable officer would have followed the prosecuting attorney's direction to file criminal charges against Plaintiff. Plaintiff has filed a cross-motion for partial summary judgment on his claims for wrongful arrest, unlawful prosecution, and unlawful search/invasion of privacy claims. Plaintiff asserts that he was arrested, prosecuted and subjected to an unlawful search of his property in violation of his constitutional rights. For the reasons set forth below, the undersigned herein recommends finds that Defendant Hubbard's motion for summary judgment should be granted.[1]

---

[1] Also pending before the Court is Defendant's motion for leave to file a supplemental motion for summary judgment on Plaintiff's purported substantive due process claim *instanter*. Notably, neither party addressed this issue and/or the pending motion at oral argument. Even assuming that such claim is properly before the Court, it fails as a matter of law because a generalized substantive due process claim is subserved by Plaintiff's claims for unlawful arrest, detention and prosecution. Such claims are fully addressed on the merits by the undersigned in this report and recommendation. Accordingly, Defendant's motion for leave to file a supplemental motion for summary judgment (Doc. 48) should be DENIED AS MOOT.

## C. Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001). The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231.

Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). *See also Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231.

Once a defendant raises a qualified immunity defense, the plaintiff must satisfy a two pronged analysis: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right, and (2) if a violation could be made out on a favorable view of the parties' submission, was the right clearly established at the time of the injury? *Saucier v. Katz,* 533 U.S. 194, 201 (2001). In its discretion, the court may initially address either of these

questions in light of the circumstances of the particular case before it in resolving an officer's qualified immunity claim. *Pearson,* 555 U.S. at 236-37.

Plaintiff bears the burden of showing that a right is clearly established. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). Defendants, however, bear the burden of showing that the challenged actions were objectively reasonable in light of the law existing at the time. *Id.*

In determining whether a right is "clearly established" for purposes of the qualified immunity inquiry, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 202. This question must be answered "in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (quoting *Saucier,* 533 U.S. at 201). The unlawfulness of the officer's conduct must be apparent in light of pre-existing law. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "If officials of reasonable competence objectively could disagree on the law, immunity should be recognized." *Cameron v. Seitz,* 38 F.3d 264, 272 (6th Cir. 1994) (citing *Mumford v. Zieba,* 4 F.3d 429, 432 (6th Cir. 1993)).

Summary judgment based on qualified immunity is not appropriate if there is a factual dispute or genuine issue of material fact "involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992).

**D.      Qualified Immunity Analysis on Plaintiff's Wrongful Arrest and Wrongful Prosecution Claims**

*1. Constitutional Violation*

To determine if Phillips has presented evidence sufficient to show Hubbard violated his constitutional rights, the court must first determine the source of the claimed right. *Phelps v. Coy,* 286 F.3d 295, 299 (6th Cir. 2009).   The Fourth Amendment provides individuals the right to be "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures…," and that "no warrants shall issue, but upon probable cause…" U.S. CONST. amend. IV.   "Today it is well established that any arrest without probable cause violates the Fourth Amendment." *Crockett v. Cumberland College,* 316 F.3d 571, 580 (6th Cir. 2003) (citing *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)).

The Sixth Circuit also recognizes malicious prosecution as a separate constitutional claim under the Fourth Amendment, which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (citing *Wallace v. Kato,* 549 U.S. 384, 390, (2007)).   To succeed on a malicious-prosecution claim under § 1983, when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove that: (1) a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty under the Fourth Amendment, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.   *Id.* at 308. Thus, Plaintiff's claims for wrongful arrest and wrongful prosecution both rise and fall

with the analysis of whether Hubbard had probable cause to arrest him as there is no dispute that Plaintiff can satisfy the other elements of his malicious prosecution claim.

The probable cause inquiry turns on whether the "facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing… that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979). *See also Gerstein v. Pugh*, 420 U.S. 103, 113-14 (1975) ("a policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime"); *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 305 (6th Cir. 2005) (An officer has probable cause when he discovers reasonably reliable information that a suspect has committed a crime) (internal citations omitted). "A reviewing court must assess the existence of probable cause "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Klein v. Long,* 275 F.3d 544, 550 (6th Cir. 2001).

"Probable cause depends on the reasonable conclusion[s] to be drawn from the facts known to the arresting officer *at the time of the arrest*." *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004) (citing *Maryland v. Pringle,* 540 U.S. 366, 371 (2003)) (emphasis added). That an individual is later acquitted of the crime for which he was arrested (as Phillips was) has no bearing on the validity of his arrest. *Id.* at 36 (citing *Gerstein v. Pugh*, 420 U.S. 103, 119–123 (1975)). Thus, arrest, even without a warrant, does not violate the Fourth Amendment if probable cause exists for the arresting officer's belief that a suspect has violated or is violating the law. *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). Moreover, the fact that a suspect was later charged with a different crime

and acquitted is of no consequence to the probable cause analysis; so long as probable cause existed to seize a suspect for any crime, an arrest is legal. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Thus, in order to establish a violation his Fourth Amendment rights, Phillips must show that Hubbard lacked probable cause for his arrest.

In the present case, Defendant Hubbard cited Phillips for criminal mischief under O.R.C. § 2909.07(a)(1). Under that section, "no person shall without privilege to do so, knowingly move, deface, damage, destroy, or otherwise improperly tamper with the property of another." "Property" is defined as "any property, real or personal, tangible or intangible, and any interest or license in that property." O. R. C. § 2901.01(10)(a). "An easement is *an interest* in the land of another which entitles the owner of the easement to a limited use of the land in which the interest exists." *Szaraz v. Consol. R.R. Corp.*, 10 Ohio App.3d 89, 91, 460 N.E.2d 1133, 1135 (1983) (emphasis added). Additionally, criminal mischief is an arrest worthy offense. If the violation does not put persons at risk of physical harm, it is a third degree misdemeanor, punishable by no more than 60 days in jail. O.R.C. § 2929.24(a)(3) .

Phillips argues that no probable cause existed at the time charges were filed because Hubbard's knowledge of the incident was insufficient to show several essential elements of the alleged crime. (Doc 54 at 10). According to Phillips, Hubbard had insufficient knowledge as to whether Phillips knowingly obstructed the easement, whether the easement was actually obstructed, whether Utter had rights to use the easement, the scope of the easement, and whether Phillips was without privilege to obstruct the easement. (Doc. 46. at 5); (Doc. 54 at 10). Phillips further argues that

because Hubbard relied solely on Utter's complaint and neglected to leave a note signifying his desire to contact Phillips, Hubbard remained willfully blind to possible exculpatory circumstances, and relied only on the word of an interested party. (Doc. 57 at 13). Thus, without sufficient and reliable knowledge regarding the aforementioned facts, Phillips asserts Hubbard could not have had probable cause to believe that Phillips was committing a crime. See *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000) (a "police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime."); *Ahlers v. Schebil*, 88 F.3d at 371-372 ( Police officers may not "make hasty, unsubstantiated arrests with impunity," nor "simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone."). Unfortunatly, Phillips assertions are misplaced.

Notably, "[t]he Fourth Amendment does not require that a police officer know a crime occurred at the time the officer arrests or searches a suspect. . .The Fourth Amendment, after all, necessitates an inquiry into probabilities, not certainty." *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998). Probable cause is not equivalent to proof beyond a reasonable doubt. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002); *Draper v. United States*, 358 U.S. 307, 311-12 (1959)(The quantum of proof required to establish probable cause is significantly lower than that required to establish guilt). Thus, knowledge as to all elements of the alleged offense is not required in order to establish probable cause. Notably, "the quantum of proof required to establish probable cause is significantly lower than that required to establish guilt." *Draper v. United States*, 358 U.S. 307, 311-12 (1959). "'Probable cause is defined as

reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.'" *United States v. McClain,* 444 F.3d 556, 562 (6th Cir .2005) (quoting *United States v. Ferguson,* 8 F.3d 385, 392 (6th Cir.1993) (en banc)).

Here, unlike the facts circumstances in *Gardenshire* and *Ahlers*, Hubbard properly investigated Mr. Utter's complaint, had no reason to believe the complaint was untruthful and/or unreliable and had no knowledge of exculpatory evidence.  Notably, the undisputed facts establish that after receiving Utter's complaint, Hubbard interviewed Utter and reviewed photographs supplied by Utter.  (Doc. 53).  Hubbard then traveled to the property at 1902 Shingle Ridge Road to further investigate and gather facts.  *Id.*  Hubbard knocked on Plaintiff's door and received no response. Hubbard observed large jagged rocks and a vehicle parked on/near the easement.  *Id.* He took photographs of the area and then sought legal advice from Brown County Prosecuting Attorney Little. Prosecutor Little, reviewed the photographs taken by Deputy Hubbard as well as the deed and real estate documents associated with the easement.  She ultimately approved the charges of criminal mischief against Plaintiff. (Doc. 41, Little dep. at 13).  In light of the foregoing the undersigned finds that the undisputed facts and circumstances were sufficient to warrant a reasonable officer to believe that Plaintiff had committed or was committing a criminal offense.  *See Beck v. Ohio*, 379 U.S.89, 91 (1964); *Devenpeck v. Alford*, 543 U.S. 146, 153 (2005).[2]

---

[2]  Additionally, Hubbard maintains probable cause also existed to charge Plaintiff with Disorderly Conduct under R.C. § 2917.11(A)(4&5) and (2) Criminal Damaging under R.C. § 2909.06(A)(1)." The sections referred to in the statute defining Disorderly Conduct state that,

> (a)(4) "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by…[h]indering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender…".  O.R.C . § 2909.06.

> (a)(5) "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another

## 2. Clearly Established Right

Assuming, *arguendo*, that Plaintiff has established a violation of his constitutional right to be free from wrongful arrest and prosecution, to defeat an invocation of qualified immunity, Plaintiff must also show that constitutional right in question was clearly established. In determining whether a right is clearly established, the Supreme Court has held, the crucial inquiry must "be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. There is a clear Constitutional prohibition against arrest and prosecution without probable cause.

However, "an arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir.), cert. denied, 554 U.S. 903, (2008). Thus, even if a factual dispute exists about the objective reasonableness of the officer's actions, a court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful.

Furthermore, a defendant is not entitled to qualified immunity for a claim of unreasonable arrest "if no reasonably competent officer would have found probable cause." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007)(citing *Malley v. Briggs*,

---

by creating a condition that is physically offensive to a person or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender…". O.R.C. § 2909.06.

The statute defining Criminal Damaging says "No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent…[k]nowingly, by any means…". O.R.C. § 2917.11.

475 U.S. 335, 341 (1986)).  Conversely, "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and [the Supreme Court has] indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

As noted by Deputy Hubbard, he is being sued in his individual capacity for actions that he took pursuant to advice, counsel, and authority of the chief legal officer of Brown County, Prosecuting Attorney Jessie Little.  Thus, Hubbard asserts that it cannot be said that he violated clearly established law by initiating criminal proceedings at the direction of the Prosecuting Attorney against Plaintiff for knowingly obstructing or interfering with a farmer's easement in the middle of the season.

In *Harlow*, the Supreme Court created an "extraordinary circumstances" exception that entitles a defendant to qualified immunity even where he or she is otherwise not entitled to it.  *Harlow*, 457 U.S. at 818-19.  The Sixth Circuit has held that reliance on the advice of counsel may constitute "extraordinary circumstances" which would entitle a defendant to qualified immunity.  *York v. Purkey*, 14 F App'. 628 (6th Cir. 2001).  Four factors are considered when a public official has followed the advice of counsel: (1) whether the advice was unequivocal and specifically tailored to the particular facts giving rise to the controversy; (2) whether complete information was provided to the advising attorney(s); (3) the prominence and competence of the advising attorney(s); and (4) how soon after the advice was received the disputed action was taken.  *Id.* at 633.

The parties' summary judgment motions and supporting memoranda provide substantial argument and analysis relating to Hubbard's reliance on the advice of Proscutor Little in and the effect of Prosecutor Little' advice, if any, on Hubbard's entitlement to qualified immunity. In light of the facts and circumstances surrounding this action, it appears the four factors weigh in favor of finding that Hubbard's reliance on Prosecutor Little's advice may constitute "extraordinary circumstances" which would entitle Hubbard to qualified immunity. However, the undersigned declines to engage in a lengthy discussion of this issue, as further discussed below, as Prosecutor's Little advice to Hubbard is not the sole basis for determinating that Hubbard's actions were objectively reasonable for purposes of qualified immunity. *See York*, 14 F. App'x at 633 (consulting an attorney and relying on rendered legal advice alone is not extraordinary for purposes of qualified immunity, it is a factor to consider).

In the context of qualified immunity, preexisting, clearly established law refers to "binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Holzemer v. City of Memphis,* 621 F.3d 512, 527 (6th Cir.2010) (internal quotation marks omitted); *see Pearson,* 129 S.Ct. at 822–23 (finding a doctrine clearly established because three federal courts of appeals and two state supreme courts had unanimously accepted it, even though the circuit in which the conduct occurred had not done so). At the same time, "'[w]hether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law.'" *Leonard v. Robinson,* 477 F.3d 347, 354 (6th Cir.2007) (quoting *Michigan v. DeFillippo,* 443 U.S. 31 (1979)). In other words, state law defines the offense for which an officer may arrest a person, while federal law dictates whether probable cause existed for an

arrest. *See, e.g., Devenpeck v. Alford,* 543 U.S. 146, 151–53 (2004)(using constitutional probable-cause standards when a plaintiff had been arrested for an alleged violation of state law and sued under § 1983 for unlawful arrest).

Based on how the Ohio statute defines criminal mischief, the undersigned finds that a reasonable officer could believe that probable cause existed to arrest Phillips. As noted above, the statute provides that "no person shall without privilege to do so, knowingly, move, deface, damage, destroy, or otherwise improperly tamper with the property of another." O.R.C. § 2909.07(A)(1). Here, the facts establish that Phillips improperly damaged and/or tampered with Utter's property without his permission by obstructing the easement in question. Upon the submission of Utter's complaint to the Brown County Sheriff's Department, Hubbard interviewed Utter. Utter told Hubbard that Phillips was obstructing the easement without his permission and showed Hubbard photographs. Hubbard then visited the property and personally observed the obstruction. He then relayed the facts gathered from his investigation to the Brown County prosecuting attorney, who authorized charges for criminal mischief. Viewing the totality of the circumstances, the evidence known to Defendant Hubbard based on his interview of Utter, investigation of the property and consultation with the prosecuting attorney, establish Hubbard reasonably believed that he had probable cause to arrest Plaintiff for criminal mischief.

Phillips also argues no probable cause warranted his arrest because "the court will find no case where anyone was lawfully charged with a crime for an easement dispute." (Doc. 54 at 6).[3] However, as noted above, an easement is an interest in

_____

[3]Plaintiff further asserts that police are not to take sides in routine property disputes between competing interested parties, such as landlords and tenants, or as here, dominant and servient tenants. As such, Plaintiff maintains that it is clearly established "that statements made by

property. In Ohio, individuals have been lawfully charged with criminal mischief for interfering/tampering with the property rights of another. *See State v. Gulley*, No. 00CA018, 2001 WL 698306 (Ohio Ct. App. June 4, 2001) (trial court properly determined that adjoining property owners were both guilty of criminal mischief by illegally removing vegetation near their property line without permission of the other); *Fleming v. Maurer*, No. 95AP070052, 1996 WL 134746 (Ohio Ct. App. Mar. 18, 1996) (trial court did not err in finding probable cause existed for appellee's filing of a criminal complaint be it criminal mischief or trespass relating to a dispute arising between the parties regarding appellee's sandstones and appellants' fence); *State v. Ross*, No. 11-91-10 (Ohio Ct. App, Mar. 23, 1992) (Depositing mud on a township road by means of a tractor so as to render vehicular traffic on the road hazardous constitutes criminal mischief).

Accordingly, the undersigned finds that Hubbard is entitled to qualified immunity on Plaintiff's claims for wrongful arrest and wrongful/malicious prosecution.

### D. Qualified Immunity Analysis on Plaintiff's Illegal Search/Invasion of Privacy Claim

Plaintiff's complaint further asserts that Hubbard knowingly conducted two warrantless searches of Phillip's property in violation of the Fourth Amendment. Phillips asserts that Hubbard entered upon private property he knew belonged to Phillips, knocked on the door, and began searching the grounds and taking photographs.

---

landlords and tenants (and presumably dominant and servient tenants) about domestic disputes are by themselves insufficient to establish probable cause." (Doc. 54., p. 18)(citing *Thomas v. Cohen*, 304 F.3d 563 (6th Cir. 2002),*Seminara v. City of Long Beach*, 9th Cir. No. 93-56395, 1995 U.S. App. LEXIS 29729; *Hebron v. Touhy*, 18 F.3d 421 (7th Cir. 1994). However, such cases are factually distinguishable from the instant action where Deputy Hubbard did not rely solely on Utter's statements before determining that probable cause existed to charge Plaintiff with criminal mischief. As detailed above, Hubbard also conducted an investigation, and consulted with his Prosecuting Attorney who approved the filing of the charges.

Hubbard contends, however, his investigation of the allegedly obstructed easement on the property located at 1902 Shinkle Ridge Road did not Violate Phillips' Fourth Amendment Rights because Hubbard's entrance was "privileged to properly exercise his duties," and because Phillips had no "reasonable expectation of privacy in the easement intended as a driveway for Mr. Utter." (Doc. 45 at 13). The undersigned agrees.

In *Katz v. U.S.*, the Supreme Court stated that "all searches conducted outside the judicial process, without prior approval by [a] judge or magistrate, are per se unreasonable under the Fourth Amendment – subject to a few well-delineated exceptions." *Katz, v. U.S.*, 389 U.S. 347, 357 (1967). To claim protection under the Fourth Amendment the claimant must have a "legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978) (citing Katz, 389 U.S. at 353). The Supreme Court has held that a subjective expectation of privacy is legitimate if it is an expectation "society is prepared to recognize as reasonable." *Minnesota v. Olson*, 495 U.S. 91, 95 (1990) (citing *Rakas*, 439 U.S. at 143-144).

Constitutional protections may extend to the curtilage of the home*. United States v. Dunn* (1987), 480 U.S. 294, 300. In determining whether an area outside of the home should be treated as curtilage, and as if it were part of the home for purposes of the Fourth Amendment, is whether the area harbors the "intimate activity associated with the sanctity of a man's home and the privacies of life." *Oliver v. United States,* 466 U.S. 170, 180 (1984). Such analyis requires the consideration of the following four factors: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which

the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. *Dunn,* at 301.

Additionally, the Sixth Circuit recently concluded that police officers did not need a warrant to enter the driveway to search car because the driveway was directly adjacent to the house, was short, was not enclosed by a fence or other barrier, no apparent steps were taken by residents of the house to protect the driveway from observation by passers by, and the portion of the driveway where the car was parked directly abutted the public sidewalk. *See United States v. Galaviz*, 645 F.3d 347, 355-356 (6th Cir. 2011).

Plaintiff argues that factual disputes exist as to the scope of Hubbard's search and that his search extended beyond the driveway. Notably, Hubbard testified that he went around the "field driveway" and to the "back of the property," where the field is because he "could not see everything from his driveway." Thus, Plaintiff asserts that Hubbard's search extended beyond the driveway thereby violating his constitutional rights. However, even accepting thses facts as true and in a light favorable to Plaintiff, the undersigned finds that Plaintiff did not have a reasonable expection of privacy in such areas, so as to esablish a Fourth Amendment violation.

Here, Plaintiff admitted in his deposition that people continually use the easement "all the time" during deer and turkey season without his permission. (Phillips dep. 55-59). Since purchasing the property in 2004, Plaintiff has not erected a fence around the property. (Doc. 45, Ex. I, Utter Aff., ¶4). According to Mr. Utter, Plaintiff does not have landscaping to obstruct view of his driveway/easement. *Id.* Up until May 22, 2009, Mr. Phillips never prevented Mr. Utter or any of his workers from using the

easement. Additionally, Mr. Utter never witnessed a dog on Phillips' property to discourage visitors or trespassers. In light of the foregoing, the undersigned finds that Plaintiff did not have a reasonable expectation of privacy in his driveway and surrounding areas near the easement and therefore Hubbard's conduct does not constitute a search as necessary to implicate the Fourth Amendment.

Even assuming that Plaintiff has established a question of fact relating to a violation of his constitutional rights, Hubbard is nonetheless entitled to qualified immunity because Plaintiff has not shown that Hubbard violated a clearly established right or otherwise acted unreasonably during his investigation of the property. As noted by Hubbard, police officers are privileged to go onto private property when in the proper exercise of their duties. *State v. Hart*, No. 97ca18, 1997 WL 800898, at n. 8 (Ohio Ct. App. Dec. 23, 1977). Mere technical trespasses do not give rise to a Fourth Amendment violation. *Id.* As such, the evidence does not establish that Hubbard violated Plaintiff's constitutional right to be free from unreasonable searches.

In closing, the undersigned does not condone the actions of Defendant Hubbard and the Brown County Sherif's Office with respect to this dispute. Although not required by law, it seems evident that basic tenements of civility should have compelled Hubbard to put forth more effort in attempting to contact Phillips before filing criminal charges. Furthermore, even after the decision was made to pursue criminal charges, the issuance of a summons versus the issuance of an arrest warrant appears more

appropriate given the nature of the dispute. That being said, fairness and civility do not equate to constitutionality. As noted above, qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). Viewing the facts in favor of Plaintiff, there is no evidence that Hubbard was plainly incompetent or knowingly violated the law.

### III. Conclusion

For these reasons, **IT IS THEREFORE RECOMMENDED THAT**: Defendants' motion for summary judgment (Doc. 45 ) be **GRANTED,** Plaintiff's motion for summary judgment (Doc. 46) be **DENIED**, this matter is be **TERMINATED** on the active docket of the Court.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

GARY PHILLIPS,

        Plaintiff,                          Case No. 1:11-cv-00087

    vs.                                  Weber, J.
                                          Bowman, M.J.

TIMOTHY HUBBARD,

        Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).